IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

WILBERT P. PRICE,
    Plaintiff,

v.                                 CIVIL ACTION NO. PJM-09-590

MARYLAND CORRECTIONAL TRAINING
CENTER OFFICIALS, et al.,
    Defendant.

******

## **MEMORANDUM OPINION**

On March 6, 2009, the Court received a civil rights complaint from Plaintiff Wilbert P. Price, an inmate incarcerated at the Maryland Correctional Training Center ("MCTC") stating that correctional employees failed to protect him from an attack from his cellmate and that he had received inadequate medical care for the injuries sustained during the attack. Paper No. 1. Plaintiff filed a Court-directed supplemental complaint. Paper No. 3. Defendants "Maryland Correctional Training Center Officials" and Officer T. Myers have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 16. Plaintiff has not filed an opposition.[1] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2010). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

**Background**

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on November 5, 2009, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 17. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.* Plaintiff sought and received an extension of time to respond to the dispositive motion (Paper Nos. 18-20), but to date has failed to do so.

1

Plaintiff states that on August 12, 2008, while housed at the MCTC, he advised Officer T. Myers that he was having problems with his cellmate and asked to be moved. He states that Myers told him to return to his cell and that he would be relocated when possible. Plaintiff states that on August 31, 2008, he was attacked by his cellmate, who bit off the tip of Plaintiff's left ring finger. Plaintiff states that "Maryland Correctional Training Center officials" immediately knew that his fingertip could not be attached. He states that unidentified officials knew he as in pain but waited three and a half months before sending him for surgery to remove the bone chips in his finger. Paper Nos. 1 and 3.

The uncontroverted records before the Court indicate that on August 12, 2008, the date Plaintiff states he advised Myers about the problems with his cellmate, Myers was not working. Moreover, at that time, Plaintiff was assigned to Housing Unit 7, B-Tier, while Myers was assigned to Housing Unit 1. Paper No. 16, Ex. C and D.

On August 21, 2008, Plaintiff was moved from Housing Unit 7 to Housing Unit 1, D-Tier where Myers was assigned. Myers avers that at no time did Plaintiff advise her that he feared for his safety. Myers avers that if he had reported to her that he feared for his safety she would have reported that information to the sergeant in charge of the Housing Unit, who would then interview Plaintiff and provide him with a formal request to be placed on protective custody which Plaintiff could then either accept or decline. Requests for protective custody are recorded in an inmate's base file. There are no requests for placement on protective custody in Plaintiff's base file prior to the August 31, 2008 incident. *Id.*, Ex. C and D. After the incident, Plaintiff was placed on protective custody. On September 16, 2008, he asked that he be removed from same. *Id.*, Ex. D.

On August 31, 2008, Plaintiff advised correctional officers that his cellmate had bitten off

the tip of his finger during a fight. *Id.,* Ex. A. Plaintiff was escorted to the dispensary and then transported to the Washington County Hospital Emergency Room. The finger tip could not be reattached due the possibility of infection from a human bite. *Id.*, Ex. B. Plaintiff was discharged later that day with medication and instruction for cleaning the injury. *Id*. Plaintiff was seen in the dispensary twice daily for medication and wound care through October 11, 2008. *Id*., Ex. B. p, 14-18. On September 11, 2008, the remaining portion of Plaintiff's finger nail was removed. *Id*., p. 15. Due to continued complaints of pain, he was sent for x-rays on September 16, 2008, and on November 7, 2008, consulted with a hand-surgeon who recommended surgery to remove bone fragments in the finger uncovered by the x-ray. *Id*., p.33-34. The surgery occurred on December 9, 2008. Plaintiff continued follow up care with the surgeon and physicians. *Id*., p. 64-96.

On December 25, 2008, Plaintiff filed a request for administrative remedy regarding Myers' alleged failure to remove him from his cell on August 12, 2008. *Id*., Ex. A, p. 13-14. The ARP was dismissed as untimely. Plaintiff's appeal of the ARP decision was dismissed based on the original filing being untimely. *Id*., at 15.

Plaintiff filed a request for administrative remedy regarding his medical care on January 7, 2009. *Id*. Ex. A, p. 16-19. The ARP was dismissed after investigation revealed he had received regular and prompt medical care. *Id*. There is no indication Plaintiff filed an appeal of that administrative decision.

**Standard of Review**

A.   **Motion to Dismiss**

The purpose of a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro,* 178 F.3d 231, 243

3

(4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1968-69 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id.* at 1969. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain,* 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.     Motion for Summary Judgment**

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*,

346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

The Court must first examine Defendants' assertion that Plaintiff's case should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md.

5

2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *See Chase*, 582 F.Supp.2d at 530; *see also Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process); *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann. Corr. Serv. §§ 10-206, 10-210; Md. Regs. Code title 12 § 07.01.03.

It is clear that Plaintiff did not exhaust his claims of failure to protect and denial of adequate medical care. Given this deficiency, these claims are subject to dismissal.

Even if Plaintiff had exhausted his failure to protect claim, Defendants would be entitled to summary judgment.  Plaintiff complains that his right to be free from cruel and unusual punishment has been violated due to prison officials' failure to protect him from assault by another prisoner. The Eighth Amendment does recognize this right.  *See  Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990).  As noted by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 833 (1994),

> Prison officials have a duty . . .  to protect prisoners from violence at the hands of other prisoners.  Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course.  Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective any more than it squares with evolving standards of decency.  Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

In a failure to protect claim, a prisoner must show, first, that the harm he suffered was objectively serious, and second, that prison officials acted with deliberate indifference.  *Id*. at 834.   The partial amputation of Plaintiff's finger satisfies this prong of the analysis.

Deliberate indifference in the context of a failure to protect claim means that defendant "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.  Unless a prison official actually makes this inference, he does not act with deliberate indifference, even where his actions violate prison regulations or can be described as stupid or lazy. *See Rich v. Bruce*, 129 F.3d 336, 339-40 (4th Cir. 1997); *see also Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997) ("[T]he fact that an inmate sought and was denied protective custody is not dispositive of the fact that prison officials were therefore deliberately indifferent to his safety.").

Defendant Myers was neither assigned to Plaintiff's housing unit nor working on the date Plaintiff states he advised her of his fear of his cellmate. Plaintiff does not indicate that he made any further efforts to notify correctional staff of his concerns and Myers avers that she was never made aware of Plaintiff's fear. As noted, a prison official is deliberately indifferent when he possesses actual, subjective knowledge of an excessive risk of harm to the prisoner's safety and disregards it. *Farmer*, 511 U.S. at 837-39. There is simply no evidence before the Court that Defendants were deliberately indifferent to Plaintiff's safety.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit evidence to support his claim, or to put the material fact of this case--the failure to protect--in dispute. *See generally Gray v. Spillman*, 925 F.2d 90 (4th Cir. 1991). Although the non-moving party may rely upon a verified complaint when allegations therein are based on personal knowledge, *see Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991), Plaintiff's complaint is not verified. Accordingly, Defendants' unopposed Motion for Summary Judgment shall be granted.

Even if Plaintiff had properly exhausted his medical claim, Defendants would still be entitled to summary judgment. Correctional employees take no part in making medical decisions or judgment regarding inmates. All medical decisions are made by employees of Correctional Medical Services (CMS), the private contractor providing health care to MCTC inmates. Correctional employees have no authority over CMS employees regarding medical treatment. Moreover, correctional employees are permitted to rely on the professional judgment of health care providers employed to care for inmates. *See Miltier v. Beorn*, 896 F.2d 848, 854-55 (4th Cir. 1990). As it does not appear that the named correctional employees affirmatively prevented

Plaintiff from receiving medical care, interfered with Plaintiff's medical treatment, or were in any manner deliberately indifferent to Plaintiff's medical needs, their dispositive motion shall be granted as to his claim.

**Conclusion**

Defendants' Motion to Dismiss, or in the Alternative for Summary Judgment is granted. Judgment shall be entered in favor of Defendants and against Plaintiff. A separate order follows.

July 22, 2010

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE